IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELVIRA MACKIE

    v.                     Civil Action No. DKC 10-0952

JEWISH FOUNDATION FOR GROUP
HOMES

## MEMORANDUM OPINION

Three motions are presently pending and ready for review in this Family Medical Leave Act case: (1) the motion of Defendant Jewish Foundation for Group Homes for summary judgment (ECF No. 28); (2) the motion of Plaintiff Elvira Mackie for leave to file a second amended complaint (ECF No. 32); and (3) the motion of Defendant Jewish Foundation for Group Homes for sanctions. (ECF No. 35). Because the issues have been fully briefed and no hearing is necessary, the court now rules. *See* Local Rule 105.6. For the reasons that follow, Defendant's motion for summary judgment will be granted, Plaintiff's motion for leave to file a second amended complaint will be denied, and Defendant's motion for sanctions will be denied.

## I. Background

Plaintiff Elvira Mackie is a permanent resident of the United States, originally from the Philippines. Defendant Jewish Foundation for Group Homes ("JFGH") is a 501(c)(3)

corporation performing business in Montgomery County. JFGH operates several group homes for adults with intellectual and developmental disabilities and/or chronic mental illness. From May 2005 until November 18, 2009, Mackie was employed by JFGH as a weekend counselor at the Meisel Group Home in Silver Spring, Maryland. In that role, she provided direct care to the residents of the Meisel Group Home. Mackie's direct supervisor was Senior Counselor, Ouida Sergeant. Sergeant reported to JFGH's Group Homes Administrator, Grace Lichaa, who in turn was supervised by Director of Programs, Rebecca Rubin.

On October 31, 2009, Mackie left work two hours early because she was not feeling well. The following day, she called Sergeant and said she had the flu and a cough and fever, and she stayed home on sick leave. (ECF No. 28-8, Mackie Dep., at 51-54). Mackie did not see a doctor for treatment or diagnosis; she simply took over-the-counter pain relief medication and drank lots of juice. (*Id.* at 59). Mackie also took paid sick leave the following weekend, November 7 and 8, 2009. (ECF No. 28-8, Mackie Dep. at 65; ECF No. 28-3, Rubin Decl. ¶ 14). Mackie spoke to Sergeant in the intervening week, and Sergeant told her to get some rest. (ECF No. 28-5, Sergeant Dep., at 41). Then on Monday, November 9, 2009, Sergeant contacted Mackie to inquire whether she could take an extra shift on November 11, 2009, a holiday. (ECF No. 28-5, Sergeant

Dep., at 42-43). Mackie agreed to take the shift, but subsequently Sergeant called and told Mackie that another worker would take the shift and informed her that she needed to have a meeting with Rebecca Rubin and Grace Lichaa before she could work another shift. (*Id.* at 43, ECF No. 28-8, Mackie Dep., at 61). That meeting was scheduled for November 17, 2009. (ECF No. 28-8, Mackie Dep., at 70). As a result, Mackie was not permitted to work on November 14 and 15, 2009, but she did receive paid leave for those days. (ECF No. 28-8, Mackie Dep., at 143-44; ECF No. 28-3, Rubin Decl. ¶ 15). When Mackie eventually had a meeting with Ms. Lichaa on November 18, 2009,[1] Mackie was informed that she was being terminated because of medication errors and resident complaints. (ECF No. 28-8, Mackie Dep., at 68, 72; ECF No. 28-6, Lichaa Dep., at 86).

The parties differ in their accounts of the events of the months leading up to Mackie's termination. JFGH maintains that in the five months leading up to Mackie's termination, it received complaints from family members of residents and from Mackie's co-workers about her conduct on the job. A number of the complaints relate to a resident named Hillary, an obese resident who had been placed on an exercise and diet plan. Lichaa stated that in March 2009 she received a complaint from

---

[1] Rubin was unable to attend the meeting on that date.

3

Hillary's mother that Mackie had told Hillary she would call the police if Hillary misbehaved. (ECF No. 28-6, Lichaa Dep., at 14-15). Hillary's mother also complained that Mackie allowed her daughter to eat unhealthy fast food at the Montgomery Mall despite the fact that Mackie was present at meetings with JFGH managers where they discussed Hillary's diet and the fact that Mackie was aware of her responsibility to ensure that Hillary ate healthy food. (ECF No. 28-6, Lichaa Dep., at 46-47; ECF No. 28-8, Mackie Dep., at 16). JFGH also contends that coworkers reported concerns with Mackie's work. Lichaa explained that two of JFGH's nurses expressed their reservations about Mackie's ability to give residents their medications correctly during the summer of 2009. (ECF No. 28-6, Lichaa Dep., at 26-29). In addition, Mackie's co-worker Edgar Silos reported that Mackie had asked him to clock her out of the system at her regular time when she needed to leave early. (ECF No. 28-6, Lichaa Dep., at 61; ECF No. 28-3, Rubin Decl., Ex. 1). Because of these and other complaints, Lichaa and Rubin decided to terminate Mackie's employment in early November 2009. (ECF No. 28-6, Lichaa Dep., at 63; ECF No. 28-3, Rubin Dep., at 36-37). They initially planned to tell Mackie she was being terminated on November 4, 2009, but they rescheduled the meeting due to Mackie's illness. (ECF No. 28-3, Rubin Decl. ¶¶ 12-13; ECF No. 28-6, Lichaa Dep., at 78). JFGH maintains that the

decision to terminate Mackie preceded, and was entirely unrelated to, her sick leave.

Mackie, however, denies that she threatened Hillary with calling the police and maintains that she shared responsibility for Hillary's food choices with the other counselors. (ECF No. 31-8, Mackie Decl. ¶ 5). In addition, Mackie explained that Hillary was taken to the mall in a van driven by another JFGH employee and with other residents and staff. (ECF No 31-8, Mackie Decl. ¶ 6; ECF No. 31-4, Lichaa Dep., at 50-51). Mackie argues that she did not make medication errors and that the reports to the contrary from other nurses are hearsay and inadmissible. (ECF No. 31-8, Mackie Decl. ¶¶ 7-8). She also denies that she asked Edgar Silo to clock out for her. (ECF No. 31-8, Mackie Decl. ¶ 9). Mackie also notes that she was recognized as an employee of the month in July 2008 and employee of the year for all of 2008. (ECF No. 31-8, Mackie Decl. ¶ 2).

On March 17, 2010, Mackie filed a complaint against JFGH in the Circuit Court for Montgomery County alleging a violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and abusive discharge under Maryland state law. (ECF No. 2). JFGH removed the case to federal court, and Mackie filed an amended complaint that added counts for negligent misrepresentation and promissory estoppel/detrimental reliance

(ECF No. 21). After discovery, JFGH filed a motion for summary judgment in its favor on all counts. (ECF No. 28). On December 3, 2010, Mackie simultaneously filed her opposition to the motion for summary judgment and a motion for leave to file a second amended complaint adding counts for breach of an implied contract and violation of 42 U.S.C. § 1981. (ECF Nos. 32 and 34). JFGH opposed the motion for leave to file a second amended complaint and included a motion for sanctions in its opposition. (ECF No. 35).

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

6

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**B.  Analysis**

**1.  FMLA Claims**

In count I of the amended complaint, Mackie alleges that JFGH is liable for FMLA interference and relation.  JFGH argues that summary judgment is appropriate on both theories because Mackie's flu was a not a serious medical condition triggering FMLA protection and because Mackie did not provide adequate notice to JFGH of her intention to take FMLA leave. (ECF No. 28-1, at 9).  In addition, JFGH contends that the claims fail because none of Mackie's requests for leave were denied and there is no causal connection between her leave and her termination.  (*Id.* at 10).

To prevail on an FMLA interference claim, an employee must establish that:  (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled.  *Rodriguez v. Smithfield Packing Co., Inc.,* 545 F.Supp.2d 508, 516 (D.Md. 2008)(citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)); 29 U.S.C. § 2615(a)(1)(prohibiting an employer from interfering with an employee's FMLA rights).

Mackie's FMLA interference claim suffers from the fatal flaw that there is no evidence that she was denied any requested leave. To the contrary, Mackie was granted sick leave for each day she requested and was given paid leave for the dates in November 2009 when she was instructed not to come to work. (ECF No. 28-3, Rubin Decl. ¶¶ 14-15). Mackie does not make any arguments to the contrary in her opposition and appears to have at least implicitly conceded that she cannot prove FMLA interference.

For an FMLA retaliation claim, a plaintiff must establish that: (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the adverse employment action was causally connected to the plaintiff's protected activity. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). The Fourth Circuit applies the *McDonnell Douglas* burden shifting framework to FMLA retaliation claims. Thus, to succeed a plaintiff must first make a prima facie showing of each of the requisite elements. The burden then shifts to defendant to put forth a legitimate, non-discriminatory business reason for the adverse action. At that point plaintiff must prove that the defendant's proffered explanation is pretextual. *Id.* at 551.

There is no dispute that Mackie's termination could be considered an adverse employment action. The parties disagree

as to whether elements one and three have been established. Beginning with the first, taking FMLA leave generally is considered a protective activity. *Id.* The issue in this case is whether Mackie was entitled to, and actually took, FMLA leave. Here, the parties disagree as to whether Mackie had a serious medical condition, whether she gave adequate notice of her intent to take FMLA leave, and whether her termination was causally connected to Mackie's leave.[2]

The FMLA provides that an eligible employee is entitled to twelve (12) weeks of leave per year for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Act defines "serious health condition" as:

> an illness, injury, impairment, or physical or mental condition that involves-
>
> (A) inpatient care in a hospital, hospice, or residential medical care facility; or
>
> (B) continuing treatment by a health care provider.

*Id.* § 2611(11). The FMLA also grants the Secretary of Labor authority to promulgate regulations implementing the Act. *See id.* § 2654. Pursuant to this authority, the Secretary

---

[2] The parties do not dispute that Mackie is an eligible employee and JFGH is an eligible employer for FMLA purposes.

promulgated a regulation further defining serious health condition. *See* 29 C.F.R. § 825.113. The regulation states:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115.

The regulation further provides in subpart b:

> (b) The term "incapacity" means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.

And in subpart c specifies that treatment:

> includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition.

And further states that:

> [a] regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

Additionally in subpart d the regulation states:

> Ordinarily, unless complications arise, the common cold, **the flu**, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the

> definition of a serious health condition and
> do not qualify for FMLA leave.

*Id.* § 825.113(d)(emphasis added). The United States Court of Appeals for the Fourth Circuit clarified in *Miller v. AT&T Corp.*, 250 F.3d 820, 832 (4th Cir. 2001) that this regulation should not be read as precluding the flu from ever qualifying as a serious health condition for FMLA purposes. "Rather, the provision is best read as clarifying that some common illnesses will not ordinarily meet the regulatory criteria and thus will not be covered under the FMLA." *Id.*

Here Mackie's alleged "serious health condition" was the flu. Mackie did not visit a medical provider about her condition and took only over-the-counter medications and drank extra fluids to treat the condition. There is no evidence that Mackie experienced serious complications or had anything more than a standard case of the flu. Contrary to Mackie's argument in her opposition, an inability to come to work for a few days, or even weeks, does not on its own indicate a serious health condition triggering FMLA leave. Indeed, under Plaintiff's theory any employee who felt too sick to work would be entitled to FMLA leave. Simply put, the record facts do not establish that Mackie had a serious health condition triggering a entitlement to FMLA leave.

JFGH also argues that Mackie did not provide sufficient information to trigger JFGH's obligation to provide FMLA leave. "To trigger employers' FMLA obligations, employees need not explicitly assert their rights under the Act; they must only inform their employers of their reasons for seeking leave." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 98 (2002); *see also* 29 C.F.R. § 825.301(b)("An employee giving notice of the need for FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act."). To determine if notice is adequate to trigger FMLA protection, the court should assess whether the employee informed the employer of "(1) such facts as to make the employer aware that the employee needed leave due to a serious health condition; and (2) the anticipated timing and duration of the leave." *Rodriguez*, 545 F.Supp.2d at 516 (internal citations omitted). "Without further details of the specific nature of an employee's illness, however, information merely indicating that an employee is 'sick' is insufficient to put an employer on notice that FMLA leave may be needed." *Id.* (citing *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001)).

Here, JFGH's argument in essence is that Mackie's flu was not a serious health condition and thus Mackie notifying JFGH that she had the flu did not trigger any FMLA obligations on JFGH's part. JFGH is correct insofar as the court's decision

that Mackie's flu did not constitute a serious health condition necessarily leads to the conclusion that the information Mackie provided about her flu did not trigger FMLA obligations on JFGH's behalf.

Even if Mackie's flu qualified as a serious health condition triggering FMLA protection, there is insufficient evidence to satisfy the causation requirement. For this element, Mackie must establish that her firing was causally connected to her FMLA protected activity. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). JFGH contends that the decision to terminate Mackie was made before the decision makers had any knowledge that Mackie had requested or taken leave and the decision was based on complaints from residents and coworkers about Mackie's performance. (ECF No. 28-1, at 10). At this stage, the burden is on Mackie to provide sufficient evidence that JFGH's explanation is pretextual to create a genuine dispute of material fact. To that end, Mackie challenges JFGH's claim about when the decision to terminate was made and also contends that the complaints about her work performance are inaccurate.

JFGH correctly notes that a plaintiff cannot establish pretext where the termination decision is made before the decision-makers learn that their employee engaged in protected activity. *See Chidebe v. MCI Telecomm. Corp.*, 19 F.Supp.2d 444,

448-49 (D.Md.), *aff'd by*, 163 F.3d 598 (1998). Here, the decision-makers have testified that the decision to terminate was made by November 4, 2009, and that only when they contacted Mackie's immediate supervisor, Ouida Sergeant, about scheduling a meeting with Mackie to inform her of her termination did they learn that Mackie was out on sick leave. (ECF No. 28-6, Lichaa Dep., at 63; ECF No. 28-7, Rubin Dep., at 37). The only supervisor aware that Mackie was out on sick leave, Ouida Sergeant, was not involved in making the decision to terminate. (*Id.*).

In addition, the relevant inquiry is not whether the employer's proffered non-discriminatory reason for the termination was wise, fair, or objectively correct, but merely whether it was the true motivation for the act. *See Hawkins v. PepsiCo., Inc.*, 203 F.3d 274, 279 (4th Cir.)*, cert. denied*, 531 U.S. 875 (2000); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998)("to establish that an employer's proffered reason for the challenged action is pretext for discrimination, the plaintiff must prove both that the reason was false, and that discrimination was the real reason for the challenged conduct.")(internal quotations omitted). In other words, if JFGH believed that Mackie's performance had been unsatisfactory, it is irrelevant whether her coworkers or the resident's complaints were truthful. JFGH has identified evidence in the

form of deposition testimony and company records to show that Lichaa and Rubin based their decision on the complaints regarding Mackie's work performance and Mackie has not produced any evidence to show that other motivations actually prompted the decision. Accordingly, Mackie also cannot satisfy the causation requirement of her retaliation claim.

For all these reasons, summary judgment in JFGH's favor will be granted on count I.

### 2. Abusive Discharge

Maryland recognizes a common law cause of action of abusive discharge for at-will employees who can demonstrate that their former employer's motivation for discharging them contravened a clear mandate of public policy. *Newell v. Runnels*, 407 Md. 578, 646 (2009)(citing *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981)). The claim is limited to situations where: "not to allow the cause of action would leave the employee without a remedy." *Id.* Thus, where a statute or regulatory provision already provides an adequate and appropriate civil remedy for the wrongful discharge the abusive discharge tort is not available. *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 422 (2003).

In her amended complaint, Mackie alleged that "federal law and Maryland public policy protect employees against discharge when employees become ill and are required to take leave."

(ECF No. 21 ¶ 6).  In her opposition, Mackie identifies the FMLA as the source of this policy in federal law.  (ECF No. 31, at 12).  Because the FMLA provides its own remedial scheme for violations of the policies expressed therein, Mackie cannot maintain an abusive discharge claim to recover for a violation of an FMLA policy.  Summary judgment for JFGH will be granted on this claim.

### 3.  Negligent Misrepresentation

To establish liability for negligent misrepresentation in Maryland, a plaintiff must prove that:  (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement, (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.  *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 135-36 (2007).

Mackie maintains that her direct supervisor, Ouida Sergeant, made false statements in early November 2009 when she told Mackie that she should stay home from work and return when she was well.  (ECF No. 21 ¶ 17; ECF No. 31, at 13).  In

requesting summary judgment, JFGH contends that Ms. Sergeant's statement is not actionable.

There are multiple flaws in Mackie's claim. First, Mackie herself admitted that Sergeant did not explicitly tell her that she would return to her prior employment status after meeting with Rubin and Lichaa. (ECF No. 28-8, Mackie Dep., at 149). Moreover, the general rule is that "a representation regarding future conduct of the party making the representation, essentially a promise, is not actionable under a theory of negligent misrepresentation." *Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F.Supp.2d 282, 291 (D.Md. 2003). The one exception is if the party making the representation regarding its future conduct knows at the time of the representation that it does not intend to carry out the promise. *Id.* (citing *Miller v. Fairchild Indus.*, 97 Md.App. 324 (1993)).

Here, Mackie's contention that Sergeant's comment be construed as a promise that Mackie's job status was secure is unconvincing. But even if Mackie is taken at her word there is no evidence that Sergeant knew that JFGH did not intend to retain Mackie at the time she made the statement. Sergeant has stated that she did not know why Lichaa wanted to meet with Mackie (ECF No. 28-5, Sergeant Dep., at 43), and Mackie also testified that Sergeant told her that she did know why Mackie had to wait until November 14 to speak with Lichaa before

returning to work. (ECF No. 28-8, Mackie Dep., at 143).
Accordingly the statement cannot sustain a negligent
misrepresentation claim.

### 4. Promissory Estoppel/Detrimental Reliance

To establish liability for detrimental reliance[3] in
Maryland, a plaintiff must establish four elements: (1) a clear
and definite promise, (2) whether the promisor has a reasonable
expectation that the offer will induce action or forbearance on
the part of the promise; (3) which does induce actual and
reasonable action or forbearance by the promisee, and (4) causes
a detriment which can only be avoided by the enforcement of the
promise. *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 342 Md.
143 (1996)(adopting test from Restatement (Second) of Contracts
§ 90(1) (1979)).

JFGH contends that Mackie's claim must fail because there
was no "clear and definite promise." Specifically, JFGH argues
that Sergeant did not clearly and definitely promise Mackie that
her employment would be unaffected by her sick leave.
(ECF No. 28-1, at 14). As evidence, JFGH points to Mackie's

_____

[3] In *Pavel Enterprises*, the Court of Appeals of Maryland
expressed its preference for the nomenclature "detrimental
reliance" instead of "promissory estoppel" because "it more
clearly expresses the concept intended" and would alleviate any
confusion between promissory and equitable estoppels. 342 Md.
at n.2. This court will follow *Pavel*'s lead and refer to the
count as one for detrimental reliance.

admission during her deposition that Sergeant did not promise that Mackie would be returned to her prior position after her meeting with Lichaa. (*Id.*)(citing ECF No. 38-8, Mackie Dep., at 149). Mackie counters that Sergeant's statement to Mackie that it was okay for her to return to work when she felt well, and Sergeant's question to Mackie asking if she could work on the holiday followed by the response "Okay, I will be working with you" constituted clear and definite promises that Mackie could return to work after her sick leave. (ECF No. 31, at 13-14)(citing Sergeant Dep., at 41-42).

A more complete statement of the contours of the action or forbearance required and the result from such action or forbearance is needed to establish a clear and definite promise. *See Dunnaville v. McCormick*, 21 F.Supp.2d 527, 529 (D.Md. 1998)(statement they "had a deal" lacked sufficient detail and clear terms). Similarly, in *McKenzie v. Comcast Cable Communications, Inc.*, 393 F.Supp.2d 362, 373 (D.Md. 2005), the court concluded that the statement "we will give your wife a show" in the context of employment negotiations with an individual, was insufficiently definite and clear. Likewise, Sergeant's comments to Mackie were lacking in sufficient detail and do not constitute clear and definite promises. Thus, they cannot form the basis of a claim for detrimental reliance, and summary judgment for JFGH will be granted on this count.

### III. Plaintiff's Motion for Leave to File a Second Amended Complaint

At the same time that Mackie filed her opposition to JFGH's motion for summary judgment, she filed a motion for leave to file a second amended complaint. (ECF No. 32). Mackie's proposed amended complaint does not include substantive changes to counts I-IV, but rather adds two additional counts—one for breach of an implied contract and one for violation of 42 U.S.C. § 1981. The crux of Mackie's breach of implied contract claim is that JFGH's employment policies and procedures gave rise to an implied contract between JFGH and Mackie whereby JFGH agreed to impose progressive discipline prior to termination. Mackie alleges that her termination without JFGH's adherence to the progressive disciple policy was a breach of that implied contract. In proposed count VI, Mackie alleges that she was terminated on the basis of her race in violation of 42 U.S.C. § 1981. Mackie argues that these two new counts are based on facts learned during discovery and since the filing of her first amended complaint. (ECF No. 32, at 1-2). JFGH opposes the motion arguing that Mackie knew of the facts alleged in the proposed second amended complaint for at least four and a half months prior to seeking leave to amend and that granting Mackie's request would unduly prejudice it. (ECF No. 35, at 1-3). JFGH also contends that the proposed new counts are futile.

Mackie's motion for leave to amend her complaint triggers both Federal Rule of Civil Procedure 15(a), governing amendments to pleadings, and Rule 16(b) government amendments to scheduling orders.  The standards for satisfying these two rules are at odds.  Rule 15(a)(2) states in pertinent part that "leave shall be freely given when justice so requires," while Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."  The Fourth Circuit resolved this tension in *Nourison Rug Corp. v. Parvisian*, 535 F.3d 295, 298 (4th Cir. 2008):

> Given their heavy case loads, district courts require the effective case management tools provided by Rule 16.  Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.  This result is consistent with rulings of other circuits. *See O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir.2004); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000); *S & W Enters. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir.2003); *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir.2003); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir.1999); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998).

Fed.R.Civ.P. Rule 16(b)'s "good cause" standard focuses on the timeliness of the amendment and the reasons for its tardy submission.  Because a court's scheduling order "'is not a frivolous piece of paper, idly entered, which can be cavalierly

disregarded by counsel without peril,'" *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) (quoting *Gestetner v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me. 1985)), a movant must demonstrate that the reasons for the tardiness of its motion justify a departure from the rules set by the court in its Scheduling Order.

The primary consideration for Rule 16(b)'s "good cause" standard is the movant's diligence. Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995). Courts are appropriately suspicious of motions for leave to amend that appear to be motivated by a desire to defeat a motion for summary judgment. *See, e.g., Goewey v. United States*, 886 F.Supp. 1268, 1284 (D.S.C. 1995)

Mackie's motion for leave to amend was filed with questionable diligence. Mackie maintains that she learned of the facts forming the basis of the two new counts during the deposition of JFGH's human resources director in October 2010 and that her motion was filed within a month of receiving a transcript of that deposition. (ECF No. 36, at 1-2). JFGH

disputes Mackie's account and points to (1) a letter sent from Plaintiff's counsel to JFGH's CEO in early January 2010 for settlement purposes stating that counsel believed Mackie was terminated based on race and/or national origin and because she took medical leave, and (2) discovery requests from Mackie where JFGH was asked to identify by race, gender, and national origin, any and all present and former JFGH employees who were disciplined or terminated for any reason between 2005 and the present. (ECF No. 35, at 3)(citing ECF Nos. 35-1 and 35-2). Mackie also argues that her motion for leave was filed promptly after she learned of the facts supporting the new claims.

The record contradicts Mackie's position. Discovery closed on October 8, 2010, and the parties' joint status report submitted on October 12, 2010, indicated that Mackie intended to file a motion for leave to file a second amended complaint. Yet over a month and a half passed before Mackie finally filed her motion on December 3, 2010. Mackie argues that the delay was necessary because she was waiting to obtain a copy of the deposition transcripts. (ECF No. 36, at 2). It is not clear why Mackie believed she needed to obtain an official transcript of the deposition prior to filing her motion for leave to amend. The transcript is not cited in either the amended complaint or the motion for leave, nor do the allegations in the proposed amended complaint contain a level of detail that suggests Mackie

was referring to lines of testimony. In light of these facts, Mackie has not made a strong argument that there is good cause to permit her to file a second amended complaint.

Even if Mackie could establish good cause under Fed.R.Civ.P. 16, her motion fails to meet the standard set forth in Fed.R.Civ.P. 15. Under Rule 15(a) leave to amend "shall be freely given when justice so requires." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). Leave should be denied under Rule 15(a) "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile if it would not survive a motion to dismiss or for summary judgment. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)(amendment is futile if the amended claim would fail to survive motion to dismiss); *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007)(amendment is futile if it would not survive a motion for summary judgment)(citing *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001)).

Permitting Mackie to add a count for breach of implied contract would be futile. Mackie's proposed count V alleges that "Defendant's employment policies require progressive discipline of employees before the employees can be terminated"

and that JFGH's policies constituted a unilateral pronouncement that created a legally enforceable expectation. (ECF No. 32-2 ¶¶ 21-22). Although it is not explicit from the proposed amended complaint, Mackie's memorandum and reply in support of her request make clear that her source for JFGH's alleged policy is the JFGH employee handbook. (*See* ECF No. 36, at 2). In Maryland, an employee handbook that states that it is not a contract cannot be construed as an implied contract. *Conkwright v. Westinghouse Elec. Corp.*, 739 F.Supp. 1006, 1020-21 (D.Md. 1990)("Although the validity of implied employment contracts has been recognized, Maryland courts have refused to find employment contracts where . . . an express disclaimer was included.")(citing *Fournier v. United States Fid. & Guar. Co.*, 82 Md.App. 31 (Md. 1990), *aff'd by*, 933 F.2d 231 (4th Cir. 1991) and *Castiglione v. Johns Hopkins Hosp.*, 69 Md.App. 325 (Md.Ct.Spec.App. 1986), *cert. denied*, 309 Md. 325 (1987)). The JFGH employee handbook contain such disclaimers. (*See* ECF No. 32-3, at JFGH 00025). The first page of the handbook states:

> This handbook is a general guide to JFGH's current employment policies and to some of your benefits and responsibilities as an employee. It is to be used for informational purposes only. Your employment with JFGH is "at will" and no provision of this handbook should be construed otherwise." Section 10.2 of the handbook discussing employee performance

> appraisals further states "Performance
> reviews and the appraisal process are
> subject to JFGH's discretion and may be
> changed or eliminated, as management deems
> appropriate."

(*Id.* at JFGH 00085). And in Section 10.3 "Expectations for Work Related Behavior" the handbook states "Our Agency, as an at-will employer, maintains complete discretion over corrective action and termination policies and practices." (*Id.*). These provisions leave no doubt that JFGH was not intending to create a unilateral contract with its employment handbook, and, thus, Mackie's breach of implied contract claim would be unsuccessful.

Permitting Mackie to add the section 1981 count would also be futile. 42 U.S.C. § 1981 states:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and
> enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit
> of all laws and proceedings for the security
> of persons and property as is enjoyed by
> white citizens, and shall be subject to like
> punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and
> to no other.

42 U.S.C. § 1981(a). Traditionally, section 1981 has been used to redress racial discrimination. *Ana Leon T. v. Fed. Reserve Bank of Chicago.*, 823 F.2d 928, 931 (6th Cir.), *cert. denied*, 484 U.S. 945 (1987). The Supreme Court clarified what protection Section 1981 afforded plaintiffs, if any, in its decision in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987). In

that case, the Court held that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. . . . If respondent . . . can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under 1981." *Id.* at 613.

Where a § 1981 claim alleges employment related discrimination, courts analyze such cases employing the scheme used in cases brought under Title VII. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir.), *cert. denied*, 531 U.S. 875 (2000); *Gairola v. Commonwealth of Va. Dept. of Gen. Serv.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985) (citations omitted). Absent direct evidence, to establish a claim for discriminatory discharge, Mackie must prove that: (1) she is a member of a protected class; (2) she was qualified for the job and performed the job satisfactorily; (3) she was discharged; and (4) following her discharge, the position remained open or she was replaced by someone of comparable qualifications outside of the protected class. *See Carter v. Ball*, 33 F.3d 450, 458-59 (4th Cir. 1994); *Coleman v. Md. Court of Appeals*, 626 F.3d 187 (4th Cir. 2010). If the plaintiff establishes a prima facie case of discrimination, the defendant must set forth a legitimate

non-discriminatory explanation for the termination, and the burden shifts back to plaintiff to show the proffered reason for the termination is pretextual.

Ordinarily the court would first determine whether Mackie has alleged a prima facie case of discrimination on the basis of race or national origin. In this case, however, such a determination is unnecessary. As discussed above in analyzing Mackie's FMLA retaliation claim, JFGH has established a legitimate non-discriminatory explanation for Mackie's termination; it was motivated by complaints about her work performance. Mackie was unable to produce any evidence to show that JFGH's explanation was pretextual. The same analysis applies with equal force to Mackie's new theory of discrimination. Assuming without deciding that Mackie pled a prima facie case of race based discrimination, her § 1981 has fatal flaws and it would be futile to permit the requested amendment to her complaint.

For all these reasons, Mackie will not be permitted to file her amended complaint.

## IV. Defendant's Motion for Sanctions

In opposing Mackie's motion for leave to file a second amended complaint, JFGH moves the court to impose sanctions against Mackie's attorney David Branch pursuant to 28 U.S.C. § 1927. Section 1927 provides that "[a]ny attorney . . . who so

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Courts have imposed sanctions under this section only when there is a clear showing of bad faith: 'when the attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay.'" *Dobkin v. Johns Hopkins Univ.*, Civ. No. HAR 93-2228, 1995 WL 167802, at *2 (D.Md. Mar. 24, 1995)(citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). Mackie's conduct does not meet the standard of bad faith necessary to support sanctions under this provision and therefore JFGH's motion will be denied.

## V. Conclusion

For the foregoing reasons Defendant JFGH's motion for summary judgment will be granted, Plaintiff Elvira Mackie's motion for leave to file a second amended complaint and Defendant JFGH's motion for sanctions will be denied. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
